UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN A.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-5699-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by giving *res judicata* effect to a prior unfavorable ALJ decision, discounting his subjective testimony, and in weighing the medical evidence.[1] (Dkt. # 16 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1981, has a high school diploma, and has worked as a home

---

[1] Plaintiff also assigns error to the ALJ's residual functional capacity ("RFC") assessment and findings at steps four and five, but in doing so only reiterates arguments raised elsewhere. (Dkt. # 16 at 18-19.) Thus, these issues need not be addressed separately.

ORDER - 1

healthcare provider, hospital housekeeper, and temporary laborer. AR at 75, 314. Plaintiff was last gainfully employed in 2016. *Id.* at 615-21.

In March 2013, Plaintiff applied for benefits. AR at 36. After the ALJ conducted a hearing on October 2, 2014 (*id.* at 64-108), the ALJ issued a decision finding Plaintiff not disabled on December 16, 2014. *Id.* at 143-57. The ALJ's decision became administratively final. *Id.* at 36.

In February 2015, Plaintiff again applied for benefits, alleging disability as of October 1, 2010. AR at 283-91. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 192-99, 203-11. The ALJ conducted a hearing on January 11, 2017 (*id.* at 606-49), and issued a decision finding Plaintiff not disabled. *Id.* at 36-49.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the application date.

Step two: Plaintiff's borderline intellectual functioning, major depressive disorder, and anxiety disorder are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: Plaintiff can perform a full range of work at all exertional levels with additional nonexertional limitations: he can perform simple, routine, repetitive tasks with no requirement to read or comprehend above a third-grade level. He can have no contact with the public and occasional contact with coworkers and supervisors. He should work in a routine and predictable environment with less than occasional changes in work tasks.

Step four: Plaintiff can perform past relevant work.

Step five: In the alternative, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, Plaintiff is not disabled.

---

[2] 20 C.F.R. § 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

AR at 36-49.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 6-11. Plaintiff appealed the final decision of the Commissioner to this Court.

**III. LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ's Erroneous Application of *Res Judicata* is Harmless

In general, an ALJ's determination that a claimant is not disabled "creates a presumption that the claimant continued to be able to work after that date." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). While *res judicata* creates a presumption of non-disability in a period subsequent to an unfavorable ALJ decision, such presumption may be overcome with a showing of "changed circumstances." *Id*.; accord *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97-4(9). If the presumption is rebutted, certain findings in the prior, final decision must be adopted unless there is new and material evidence relating to those findings or a relevant change in law or methodology. *See Chavez*, 844 F.2d at 694.

In this case, it is undisputed that Plaintiff's prior disability determination became administratively final on December 16, 2014, and that as a result, Plaintiff is not eligible for benefits on or before that date. (*See* Dkt. # 18 at 2.) Plaintiff challenges the ALJ's application of the *Chavez* presumption to the period beginning December 17, 2014, arguing that the ALJ should have found that he rebutted the presumption of continuing non-disability due to, *inter alia*, the fact that he was unrepresented by an attorney during his prior claim adjudication. (*See Id.* at 3-4 (citing *Lester*, 81 F.3d at 827).)

Even if Plaintiff is correct that the ALJ erred in finding that he had failed to rebut the presumption of continuing non-disability, he has not shown how this error prejudiced him, because the ALJ fully considered the merits of Plaintiff's claim for benefits and discussed all of the new evidence that had been presented since the time of Plaintiff's prior denial. The ALJ's decision reflects independent analysis of the five-step sequential evaluation, rather than an adoption of findings from the prior decision. *Compare* AR at 38-49 *with id*. at 146-57. Thus,

although the ALJ purported to give *res judicata* effect to the prior ALJ decision (*id*. at 36), this finding did not impact the ultimate nondisability determination. *See, e.g.*, *Cha Yang v. Comm'r of Social Sec. Admin.*, 488 Fed. Appx. 203, 204 (9th Cir. 2012) (finding that although the ALJ erroneously found that Plaintiff had not shown changed circumstances, the error was harmless because the ALJ went on to weigh the medical evidence); *Tunstall v. Berryhill*, 2019 WL 1170480 at *4 (E.D. Cal. Mar. 13, 2019) (finding harmless an erroneous application of *res judicata* because the ALJ considered the evidence that did not exist at the time of the prior decision); *Conrad v. Berryhill*, 2018 WL 437460, at *4 (C.D. Cal. Jan. 16, 2018) (finding a purported application of *res judicata* to be harmless error because "[t]he ALJ did not in fact adopt the prior ALJ's RFC determination; he independently reviewed medical evidence from after the [prior] decision and used that evidence in determining Plaintiff's RFC after finding that she had established new severe impairments.").

### B. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's subjective testimony for several reasons. The ALJ found that (1) Plaintiff's description of his symptoms was contradicted by the medical evidence, which supported the ALJ's RFC; (2) Plaintiff's symptoms improved with medication; (3) Plaintiff was not entirely compliant with treatment recommendations; (4) Plaintiff was able to work in the past despite some of the same symptoms he now claims are disabling; (5) Plaintiff had secondary gain motivations for obtaining treatment, as evidenced by his report that he started therapy at the suggestion of his disability lawyer; (6) Plaintiff's activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"; and (7) Plaintiff was able to work during the adjudicated period. AR at 42-47. Plaintiff contends that the ALJ's

reasons are not clear and convincing, as required in the Ninth Circuit.[4] *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court finds that although some of the reasons are insufficient, many of the reasons are clear and convincing and the erroneous reasons amount to harmless error.

### 1. *Medical Evidence, Improvement, Non-Compliance, and Work History*

The ALJ cited various aspects of the medical record as evidence that Plaintiff's limitations were not as severe as alleged, namely the normal findings or findings of only mild impairment, the evidence of improvement with medication, and the evidence of Plaintiff's failure to consistently take his medication. AR at 44-46. Plaintiff first argues that a lack of support in the medical record cannot solely support an ALJ's rejection of his testimony. (Dkt. # 16 at 12.) But this was not the ALJ's only reason to discount Plaintiff's testimony, and thus this argument does not show error in the ALJ's decision.

Next, Plaintiff argues that even if his symptoms improved with treatment, that improvement is not a reason to discount the testimony about the symptoms that persisted. (Dkt. # 16 at 12.) The ALJ cited treatment notes describing Plaintiff's medications "working well," specifically as to increased energy, feeling happier and less sad, and decreased anxiety. AR at 46 (citing *id.* at 397, 406, 423, 460, 464). This evidence supports the ALJ's assessment, and does not suggest that disabling symptoms persisted when he complied with his medication regimen.

Lastly, Plaintiff contends that he should not be punished for his failure to comply with his treatment regimen because he has a mental impairment. (Dkt. # 16 at 12-13.) This argument is not persuasive. The ALJ cited evidence that Plaintiff "often forgets" to take his antidepressant

---

[4] Plaintiff also devotes a portion of his brief to a lengthy summary of his subjective testimony. (Dkt. # 16 at 15-18.) This part of the brief does not advance a legal argument and is thus not a productive use of his briefing allotment.

medication (AR at 46 (citing *id*. at 596)), and the ALJ reasonably interpreted this evidence as undermining his disability allegation in light of his reports of improvement when compliant (as discussed in the previous paragraph). For all of these reasons, the Court finds that the ALJ's reasoning related to the medical record supports the ALJ's assessment of Plaintiff's testimony.

Likewise, the ALJ's reasoning with regard to Plaintiff's work history also supports the ALJ's discounting of Plaintiff's testimony. The ALJ noted that Plaintiff testified at the hearing that he had experienced some mental symptoms since his 20s, and yet he had been capable of working at substantial gainful levels during that time. AR at 46. Plaintiff points to his earnings record to argue that he only worked at that level in one year, and that this "very limited work history" is therefore not a valid reason to discount his testimony. (Dkt. # 16 at 13.) It may be true that Plaintiff did not work at a substantial gainful level for long, but he was nonetheless capable of working at that level despite experiencing some of the same mental symptoms he now claims are disabling, and the ALJ did not err in discounting his testimony in part on that basis. *See*, *e.g.*, *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs."). The ALJ's interpretation is also bolstered by the fact that this job ended for reasons unrelated to Plaintiff's impairments. *See* AR at 622-23.

The ALJ further noted that Plaintiff worked several short-term jobs during the adjudicated period, and even if some of those ended due to his pace deficits, Plaintiff had been nonetheless able to adequately perform non-production-based jobs, which ended for reasons unrelated to Plaintiff's impairments. AR at 46-47 (referencing *id*. at 615-26). This evidence also supports the ALJ's discounting of Plaintiff's testimony. *See Bruton v. Massanari*, 268 F.3d 824,

828 (9th Cir. 2001) (the ALJ properly discounted a claimant's allegation of disability because his last job ended for reasons unrelated to his impairments); Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982) ("A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work.").

### 2. *Activities and Secondary Gain*

The ALJ found that Plaintiff's activities were not as limited as one would expect for a person claiming disability. AR at 46. The ALJ did not identify any contradictions between Plaintiff's activities and his allegations, or explain how Plaintiff's activities demonstrate the existence of transferable work skills. *Id*. The ALJ's reliance on Plaintiff's activities is therefore erroneous. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

The ALJ also found that the record "strongly suggests" that Plaintiff had a secondary gain motivation for returning to mental health treatment, because he told his provider that he wanted to resume therapy at his disability lawyer's suggestion. AR at 46 (citing *id*. at 476). This is an unreasonable interpretation of the record, when the cited treatment note is read in its entirety. After a gap in therapy of about a year, Plaintiff returned to the therapy office, reporting that he was "seeking to re-enroll into mental health therapy as recommended by his disability lawyer for depression and anxiety. He shares he is also interested in counseling for himself to help learn coping skills for mood and talking about things from his past that continue to bother him." AR at 476. In the context of Plaintiff's entire explanation for his return to therapy, the Court finds the ALJ's interpretation unreasonable.

These errors are harmless, however, in light of the other valid reasons described above.

ORDER - 8

*See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Because the ALJ provided multiple valid reasons to discount Plaintiff's testimony, the ALJ's assessment of Plaintiff's testimony is affirmed.

### C. The ALJ Did Not Harmfully Err in Assessing the Medical Evidence

Plaintiff assigns error to the ALJ's assessment of various parts of the medical record, each of which the Court will address in turn.

#### 1. Legal Standards

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester*, 81 F.3d at 830. Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2. *Alysa Ruddell, Ph.D.*

Dr. Ruddell examined Plaintiff in March 2015 and completed a DSHS form opinion describing his symptoms and limitations. AR at 439. Dr. Ruddell found that Plaintiff had *inter alia* marked limitations in his ability to complete either simple or detailed tasks, learn new tasks, adapt to work setting changes, complete a workday/workweek without interruptions from psychological symptoms, and set realistic goals and plan independently. *Id*. at 441. The ALJ found those marked limitations to be "entirely inconsistent" with his ability to work and his report of improvement three months later, as well as his testimony that his depression symptoms had been the same for years. *Id*. at 47.

Plaintiff argues that his limited ability to work is actually consistent with Dr. Ruddell's

opinion (dkt. # 16 at 6), but this is not the only reasonable interpretation of the record. Dr. Ruddell found that Plaintiff would be markedly limited in his ability to complete either simple or detailed tasks, and yet Plaintiff evinced an ability to complete work tasks for years, including for short times during the adjudicated period. The ALJ did not err in finding this ability to work to be inconsistent with some of the limitations described by Dr. Ruddell.

The ALJ also cited a treatment note, where Plaintiff reported in June 2015 that he has been doing "remarkably well" since his mother died, as inconsistent with Dr. Ruddell's opinion. AR at 47 (citing *id*. at 523). Plaintiff's mother died ten days before Dr. Ruddell's evaluation. *Id*. at 439. Although Plaintiff contends that the ALJ did not cite evidence that supports her finding that Plaintiff was working "5 different side jobs" shortly after Dr. Ruddell's evaluation (dkt. # 16 at 6), the ALJ did in fact cite Plaintiff's report from June 2015 that he was working five different side jobs at that time. AR at 47 (citing *id*. at 524). Again, it is reasonable to find Plaintiff's ability to perform those jobs to be inconsistent with the marked limitations identified by Dr. Ruddell.

Lastly, Plaintiff challenges the ALJ's finding that Dr. Ruddell's opinion was inconsistent with his testimony that his depression had remained the same for years. *See* AR at 637 (Plaintiff's hearing testimony that his depression had stayed about the same over the past couple of years). Dr. Ruddell opined that Plaintiff's depression symptoms were of marked severity (*id*. at 440), but again, Plaintiff reported that he had been doing well during the time of Dr. Ruddell's evaluation and he also reported an ability to work multiple jobs, which reasonably contradicts Dr. Ruddell's opinion that his symptoms were very significantly limiting his ability to perform work activities. Although Plaintiff contends that Dr. Ruddell based her opinion on her own clinical observations, rather than Plaintiff's self-report (dkt. # 16 at 6), she listed only Plaintiff's self-reported symptoms in her "clinical findings" section. AR at 440 ("Depressive [symptoms]

limit ability to concentrate, attend and focus on work-related tasks"). Plaintiff has not shown that the ALJ's assessment of Dr. Ruddell's opinion is unreasonable, and or that the ALJ erred in discounting Dr. Ruddell's opinion as inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

### *3. Terilee Wingate, Ph.D.*

Dr. Wingate examined Plaintiff in January 2017 and completed a DSHS form opinion addressing his symptoms and limitations. AR at 596-605. The ALJ stated that she gave Dr. Wingate's opinion very little weight because "it was primarily based on past instances of exhibiting secondary gain." *Id*. at 47. The ALJ also found that Dr. Wingate's opinion regarding the severity of Plaintiff's depression symptoms was inconsistent with evidence in the record showing that his depression was mild or improved, and also inconsistent with Plaintiff's work history. *Id*. at 45.

Plaintiff disputes that Dr. Wingate's opinion was based on "past instances of exhibiting secondary gain." (Dkt. # 16 at 8.) The Commissioner interprets the ALJ's finding to mean that Dr. Wingate's opinion was based on past evaluation reports wherein Plaintiff had been attempting to obtain benefits. (Dkt. # 17 at 13.) That appears to be a reasonable interpretation, given that Dr. Wingate referred to her review of multiple prior evaluations. AR at 596. But those prior evaluations are not in the record, and the prior ALJ decision did not refer to those evaluations as evidencing a secondary gain motivation, which leaves this Court unable to determine whether the ALJ fairly characterized those opinions. *Id*. at 153-54. The fact that prior evaluations were performed to determine eligibility for benefits does not *per se* demonstrate a secondary gain motivation. Thus, the Court cannot find that the ALJ's characterization of

Plaintiff's prior evaluations is based on substantial evidence.

Nonetheless, the ALJ's other reasons are legitimate. The ALJ cited treatment notes showing that Plaintiff's depression symptoms were significantly less severe than as described by Dr. Wingate, or that they had stabilized or improved. AR at 45 (citing *id.* at 401, 403, 409, 413, 463, 465, 467, 502, 504, 506, 508, 510, 514, 516, 528, 530, 572, 587, 589, 591, 593). The ALJ also reasonably found that Plaintiff's work history was inconsistent with Dr. Wingate's opinion describing marked workplace limitations. *Id.* For example, Dr. Wingate concluded that Plaintiff's condition was "lifelong and the prognosis for work is guarded to poor" (*id.* at 599), but this is inconsistent with Plaintiff's ability to work in the past. Because the ALJ provided other valid reasons to discount Dr. Wingate's opinion, her erroneous reasoning regarding the basis for Dr. Wingate's opinion is harmless. *See Carmickle*, 533 F.3d at 1162-63.

        *4.     Brad Bates, Ph.D.*

Dr. Bates examined Plaintiff in March 2007 and wrote a narrative report describing Plaintiff's symptoms and limitations. AR at 390-96. The ALJ noted that this evaluation significantly predates the adjudicated period and therefore does not describe Plaintiff's functioning during the period at issue. *Id.* at 45. The ALJ nonetheless adopted Dr. Bates's findings that Plaintiff has borderline intellectual functioning and only mild depression, with no problems with production pace, finding those opinions to be consistent with the record before her. *Id.*

Plaintiff argues that the ALJ erred in discounting Dr. Bates's opinion as remote in time because "there is no evidence that [his] condition ever improved since then." (Dkt. # 16 at 8.) This interpretation of the record does not establish error in the ALJ's decision, however. The ALJ in a sense agreed with this argument, because she found part of Dr. Bates's conclusions to

be consistent with the record before her. AR at 45. Furthermore, there is Ninth Circuit authority supporting the ALJ's discounting an opinion dated more than seven years before the beginning of the adjudicated period. *See Carmickle*, 533 F.3d at 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *Rangrej v. Berryhill*, 728 Fed. Appx. 612, 614 (9th Cir. Mar. 20, 2018) ("The ALJ properly rejected Dr. Baldridge's March 2011 opinion because it predated the relevant period and relied on Rangrej's self-reports."). Plaintiff has not shown that the ALJ erred in discounting Dr. Bates's opinion.

### 5. *State Agency Consultants*

The ALJ adopted the opinions of the State agency consultants, finding the opinions consistent with the medical evidence. AR at 47. Plaintiff notes that the consultants did not have access to medical evidence that post-dates their review of the record, which is undoubtedly true, but the ALJ had access to the evidence that post-dates the State agency reviews and found their opinions to be consistent with that evidence. (Dkt. # 16 at 9.) Plaintiff has not shown that the ALJ erred in crediting the State agency opinions. *See Andrews*, 53 F.3d at 1041 (holding that "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record'" (quoting *Magallanes*, 881 F.2d at 752)).

The ALJ noted that the State agency opinions were consistent with the prior ALJ decision "from which time the claimant has minimal to no change in his conditions." AR at 47. The State agency opinions explicitly acknowledge this consistency. *Id*. at 173-74, 188. Even if, as discussed above, the State agency erroneously applied *Chavez* to the prior ALJ decision, the opinions also discuss and weigh medical evidence that post-dates the prior ALJ decision. *Id*. at 163-74, 177-89. Thus, Plaintiff has not shown that he was harmed by the ALJ crediting State

agency opinions that considered the medical evidence available to them, despite purportedly applying *Chavez*.

   6.   *Miscellany*

Plaintiff devotes a portion of his brief to summarizing medical evidence that he asserts is consistent with the opinions of Drs. Ruddell and Wingate. (Dkt. # 16 at 9-11.) Even assuming that is true, it does not establish error in the ALJ's decision, and therefore the Court need not address this evidence further.

**V.   CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 12th day of July, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge